Peter R. Ginsberg (PG6712)
Patrick Gaffney (PG1584)
CROWELL & MORING LLP
153 East 53rd Street
New York, NY  10022
(P):  212-223-4000
(F):  212-223-4134

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------- x
                                              :
MERRILL HERMAN AND SHARRON                    :
DUPLER,                                       :
                                              :
                                              :
                    Plaintiffs,               :
                                              :   07 Civ. 10263 (SCR)
                                              :
          -against-                           :
                                              :
                                              :
DAVID BERSON, DAREMY COURT                    :
QUALIFIED VENTURES, L.L.C., DAREMY            :   ORAL ARGUMENT REQUESTED
COURT XIV, INC. and                           :
FISERV, INC.,                                 :
                                              :
                    Defendants.               :
                                              :
------------------------------------------------------------- x
```

**MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANTS' MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

PRELIMINARY STATEMENT.....................................................................................1

STATEMENT OF FACTS ..............................................................................................1

ARGUMENT ...................................................................................................................4

I.      PLAINTIFFS' SECURITIES FRAUD CLAIMS ARE NOT TIME BARRED
        UNDER CURRENT FEDERAL LAW .................................................................5

II.     THE COMPLAINT STATES CLAIMS AGAINST DEFENDANTS FOR
        VIOLATIONS OF SECTION 10(b)(5) OF THE SECURITIES AND
        EXCHANGE ACT OF 1934 AND S.E.C. RULE 10b-5 ..............................................6

        A.     The Complaint Alleges Facts Supporting a Strong Inference That
               Defendants Acted with Scienter........................................................................7

        B.     The Complaint Alleges Facts That Satisfy the Loss Causation Element of
               a Securities Fraud Claim..................................................................................10

        C.     Plaintiffs Have Pled Their Securities Fraud Claims with the Requisite
               Particularity......................................................................................................11

III.    PLAINTIFFS' CLAIMS FOR COMMON LAW FRAUD, BREACH OF
        FIDUCIARY DUTY AND GROSS NEGLIGENCE ARE NOT DUPLICATIVE.......13

IV.     SHOULD A PLEADING DEFICIENCY BE FOUND, PLAINTIFFS SHOULD
        BE GRANTED LEAVE TO AMEND THE COMPLAINT ......................................14

        A.     Leave to Amend Is Proper ..............................................................................14

        B.     Limited Discovery is Appropriate...................................................................15

CONCLUSION ...............................................................................................................17

# TABLE OF AUTHORITIES

## Cases

Acito v. IMCERA Group, Inc., 47 F.3d 47 (2d Cir. 1995)...................................................... 15

Block v. Razorfish, Inc., 121 F.Supp.2d 401 (S.D.N.Y. 2000) .............................................. 13

Castellano v. Young & Rubicam Inc., 257 F.3d 171 (2d Cir. 2001).................................. 10, 11

Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991) ...................................... 15

Devaney v. Chester, 813 F.2d 566 (2d Cir. 1987) ................................................................... 15

Dura Pharms., Inc. v. Broudo, 544 U.S. 336 (2005) ................................................................ 6

Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189 (2d Cir. 2003) ...... 10

Enterprise Mortg. Acceptance Co., LLC, Sec. Lit. v. Enter. Mortg. Acceptance Co.,
    391 F.3d 401 (2d Cir. 2004)............................................................................................. 5

Fidel v. Farley, 392 F.3d 220 (6th Cir. 2004) ......................................................................... 8

Flickinger v. Harold C. Brown & Co., 947 F.2d 595 (2d Cir.1991) ........................................ 14

Gordon Partners v. Blumenthal, et. al., 2007 WL 431864, at *1 (S.D.N.Y. Feb. 9, 2007).......... 10

In re Carter-Wallace, Inc. Sec. Litig., 220 F.3d 36 (2d Cir. 2000) ........................................... 8

In re Worldcom Sec. Litig., 234 F.Supp.2d 301 (S.D.N.Y. 2002)............................................ 16

Kalnit v. Eichler, 264 F.3d 131 (2d Cir. 2001) .................................................................. 8, 14

Kanev v. Turk, 187 A.D.2d 395, 590 N.Y.S.2d 211 (1st Dep't 1992)....................................... 14

Lavin v. Kaufman, Greenhut, Lebowitz & Forman, 226 A.D.2d 107 (1st Dep't 1996) .............. 13

Lentell v. Merrill Lynch & Co. Inc., 396 F.3d 161 (2d Cir. 2005) .......................................... 10

Luce v. Edelstein, 802 F.2d 49 (2d Cir. 1986)........................................................................ 15

Miller v. Lazard, Ltd., 473 F. Supp.2d 571 (S.D.N.Y. 2007)..................................................... 8

New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308 (1995) ............................................. 13

Non-Linear Trading Co., Inc., v. Braddis Assoc., Inc., 243 A.D.2d 107 (1st Dep't 1998).......... 13

Rampersad v. Deutsche Bank Sec. Inc., 2004 WL 616132, at *1 (S.D.N.Y. March 30, 2004) ..... 6

Roth v. Jennings, 2007 WL 1629889, at *1 (2d Cir. June 6, 2007)............................................ 5

Rozani v. Sanofi S.A., 899 F.2d 195 (2d Cir. 1990) ........................................................... 14, 15

Shah v. Meeker, 435 F.3d 244 (2d Cir. 2006) ......................................................................... 5

Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124 (2d Cir. 1994) .............................................. 11

Taft v. Ackermans, 2005 WL 850916, at *1 (S.D.N.Y. April 13, 2005) .................................... 16

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499 (2007)................................. passim

Xerion Partners I LLC v. Resurgence Asset Mgmt., LLC, 474 F.Supp.2d 505
    (S.D.N.Y. 2007)............................................................................................................. 11

## Statutes

15 U.S.C. § 78j(b) .................................................................................................................. 6

15 U.S.C. § 78u-4(b)(3)(B)..................................................................................................... 17

15 U.S.C. § 78u-4(b)(4)........................................................................................................... 11

17 CFR §240.10b-5 ................................................................................................................. 6

28 U.S.C.A. § 1658(b) ............................................................................................................. 5

## Rules

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 7

Fed. R. Civ. P. 15(a) .............................................................................................................. 16

Fed. R. Civ. P. 9(b)................................................................................................................ 17

## PRELIMINARY STATEMENT

The Defendants used false promises of an investment opportunity that would generate guaranteed returns of twelve percent annually, with no fixed term, and assured Plaintiffs that they could liquidate their investments at any time, to lure Plaintiffs, unsophisticated investors, into investing their personal retirement and family savings. Immediately after becoming suspicious that Defendants had falsely represented the liquidity and rate of return for their investments, Plaintiffs made demands for the return of their funds and now Defendants refuse to return their money. The Complaint alleges that Plaintiffs would not have been damaged in the first place but for Defendants' knowingly false and reckless misrepresentations, by which they were first duped into investing, and later into maintaining their investments, ultimately to the detriment of their retirement savings. Each of Plaintiffs' claims are properly pled and meritorious, in contrast to the Defendants' Motion to Dismiss, which is based on outdated law and erroneous facts to conjure up non-existent pleading deficiencies.

## STATEMENT OF FACTS

Plaintiffs, Merrill Herman ("Herman") and Sharron Dupler ("Dupler") (collectively "Plaintiffs"), are husband and wife who invested their retirement savings and savings for their children, Alex and Daniel, in investment funds that were recommended by their trusted long-time accountant, Defendant David Berson ("Berson"). Compl. at ¶¶ 1, 13, 24. In March 2007, Plaintiffs decided to redeem their and their children's investments from the funds after they discovered income tax reporting discrepancies that made them suspicious that Defendants had misrepresented the nature of the investments. Compl. at ¶¶ 25, 26. Plaintiffs have tried to redeem their investments without success. Compl. at ¶¶ 26-27.

**Defendants Establish a False Sense of Trust and Respect**

In or about 1987, Plaintiffs were referred to Defendant Berson for accounting services. Compl. at ¶ 13. Defendant Berson thereafter prepared Plaintiffs' tax returns for over 15 years before he broached the topic of an investment opportunity to the Plaintiffs. Compl. at ¶ 14. Plaintiffs are not sophisticated investors and have limited investment experience. Compl. at ¶ 12. They have never taken courses on investing and trusted their long time accountant's advice. Compl. at ¶¶ 12, 15.

**Defendants' Oral Misrepresentations**

In or about the summer of 2002, Defendant Berson told Plaintiffs of an investment opportunity that guaranteed returns of twelve percent annually, with no fixed term and the ability to liquidate the investment at any time. Compl. at ¶ 14. Defendant Berson told Plaintiffs that the investment was a private investment fund known as Daremy Court Qualified Ventures, L.L.C. ("Daremy Court"). [1] Compl. at ¶ 14. Plaintiff Herman, acting at Defendant Berson's direction and in reliance upon his representations, rolled over his retirement savings from his employer's qualified plan in August 2002 in the amount of $49,888.08, to Daremy Court. [2] Compl. at ¶ 16. Similarly, Plaintiff Dupler, acting at Defendant Berson's direction and based on his misrepresentations, rolled over her retirement savings from her employer's qualified plan in

---

[1] At the time Defendant Berson made the misrepresentations and omissions he was acting in his individual capacity and on behalf of Daremy and Daremy XIV. Daremy and Daremy XIV were founded, operated, and marketed by Defendant Berson. Compl. at ¶¶ 9-10, 14 and 22. In fact, according to the New York Department of State, Division of Corporations, 5 Daremy Court, Defendant Berson's residence, is listed as both companies' address. Further, Defendant Berson is listed as Daremy XIV's chairman or chief executive officer.

[2] On or about January 14, 2008, a stipulation was entered wherein FISERV, the trust company administering Daremy Court. FISERV was dismissed from this action because of an existing arbitration clause.

August 2002, in the amount of $145,172.74 to Daremy Court.  She also made an additional rollover contribution of $3,413.00 in June 2004 to Daremy Court.  Compl. at ¶ 17.

Further misrepresentations followed.  In or about August 2002, Defendant Berson told Plaintiffs that Daremy Court XIV, Inc. ("Daremy Court XIV"), a second private investment fund founded by Defendant Berson, also promised to generate guaranteed twelve percent annual dividends for its investors, irrespective of the stock market's performance, and that there was no fixed term for investments in Daremy Court XIV.  Compl. at ¶ 22.  Plaintiff Herman invested $55,000.00 of non-qualified monies in August 2002 in Daremy Court XIV.  Plaintiff Herman made additional capital contributions in Daremy XIV based on the Defendants' continuing misrepresentations of:   a) $20,000.00 in June 2003; b) $20,000.00 in October 2003; and c) $20,000.00 in September 2004. Compl. at ¶ 22.  Plaintiffs also opened additional accounts for their children based on Defendants' misrepresentations.  Plaintiffs contributed $10,000.00 in October 2003 in a Daremy XIV account for their son Alex and they contributed $13,000.00 in June 2006 in a Daremy XIV account for their son Daniel.  Compl. at ¶ 24.

Plaintiffs received account statements from FISERV, based on reporting by Defendants Berson, Daremy and Daremy XIV, that seemingly confirmed that their investments were in fact performing at the promised twelve percent annualized returns.  Compl. at ¶ 23.  Plaintiffs also paid taxes (Defendant Berson prepared the returns) on the dividends earned in the non-qualified Daremy XIV accounts.  Compl. at ¶ 23.  Despite the appearance that Plaintiffs were indeed receiving the guaranteed returns, the sham would prove to last for only so long.

Daremy Court and Daremy Court XIV ("Funds") never existed in the form Defendants represented because no such investment, guaranteeing twelve percent returns with no redemption restrictions, could have existed.  Compl. at ¶ 29.  The Defendants' fraudulent scheme began to

3

unravel when Plaintiffs met with Defendant Berson in or about March 2007 to discuss Plaintiffs' 2006 tax returns. Compl. at ¶ 25.

**Plaintiffs Lose Their Family Savings**

Plaintiffs relied on Defendants' misrepresentations and omissions by initially investing and continuing to invest with the Funds, and, later in electing to remain invested in the Funds. Compl. at ¶ 32. In or about March 2007, Plaintiffs met with Defendant Berson and noticed, for the first time since they began investing in Daremy XIV, that no interest income from the fund was listed on the Schedule B of their 2006 tax return. Plaintiffs then attempted to redeem their retirement and children's money from the Funds. Compl. at ¶¶ 25-26. In response to Plaintiffs' redemption demand, Defendant Berson told Plaintiffs that certain filings with the SEC were required before liquidation orders could take place, and that this process would take several months. Compl. at ¶ 26. After waiting almost a year, and several further unsuccessful attempts to contact Defendant Berson, Plaintiffs have yet to redeem a single dollar of their family's savings. Compl. at ¶ 27. To date, Plaintiffs' redemption requests have not been honored. Plaintiffs have received nothing back of their investment, which is no small amount for the family - in excess of $500,000. Compl. at ¶ 33.

Plaintiffs brought the instant action on or about November 12, 2007, alleging violations of federal securities laws, common law fraud, breach of fiduciary duty, breach of contract, and gross negligence. On or about January 18, 2008, Defendants filed a motion to dismiss Plaintiffs' meritorious and well pled claims.

**ARGUMENT**

A District Court assessing a motion to dismiss "must accept as true all of the factual allegations set out in plaintiffs' complaint, draw inferences from those allegations in the light

most favorable to plaintiff, and construe the complaint liberally." *See* Roth v. Jennings, 06-0784-cv, 2007 WL 1629889, at *11 (2d Cir. June 6, 2007). The Court is required to view the complaint as a whole, and may not simply focus on particular allegations in isolation without regard for the facts and inferences to be drawn from other parts of the complaint. *See* Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499, 2509 (2007) (noting that on a 12(b)(6) motion the court must examine "*all* of the facts alleged, taken collectively . . . not whether any individual allegation, scrutinized in isolation meets" the pleading standards) (*emphasis in original*).

Each claim asserted in the Complaint surpasses these threshold pleading burdens, and the First and Second Counts satisfy the supplemental requirements associated with securities and common law fraud pleading. Consequently, Defendant's motion should be denied.

## I. PLAINTIFFS' SECURITIES FRAUD CLAIMS ARE NOT TIME BARRED UNDER CURRENT FEDERAL LAW

Defendants' assertion that Plaintiffs' claims are time barred is based on outdated law and is without merit. The Sarbanes-Oxley Act of 2002 extended the statute of limitations for federal securities fraud claims to the earlier of two years after the discovery of the facts constituting the violation or five years after such violation. 28 U.S.C.A. § 1658(b); Enterprise Mortg. Acceptance Co., LLC, Sec. Lit. v. Enter. Mortg. Acceptance Co., 391 F.3d 401, 406 (2d Cir. 2004);, Shah v. Meeker, 435 F.3d 244, 249 (2d Cir. 2006) . The Sarbanes-Oxley Act of 2002 unambiguously replaced the one year/three year statute of limitations cited by Defendants. *Id.*

Plaintiffs' claims are not time barred because, as the Complaint alleges, based on Defendants' continuing misrepresentations, Plaintiffs' last investment in Daremy XIV occurred in June 2006 and Daremy Court in June 2004, both dates within 5 years of filing their Complaint.

Plaintiffs discovered the facts constituting the fraud in or about March 2007 and commenced this action on November 13, 2007, well within the period of limitations. Accordingly, Defendants' statute of limitation fails as a matter of law. *See* Rampersad v. Deutsche Bank Sec. Inc., 02 Civ. 7311(LTS)(AJP), 2004 WL 616132, at *12 (S.D.N.Y. March 30, 2004) .

## II. THE COMPLAINT STATES CLAIMS AGAINST DEFENDANTS FOR VIOLATIONS OF SECTION 10(b)(5) OF THE SECURITIES AND EXCHANGE ACT OF 1934 AND S.E.C. RULE 10b-5

Under Section 10(b) of the Securities Exchange Act of 1934, it is unlawful to "use or employ, in connection with the purchase or sale of any security  . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission ("SEC")] may prescribe[.]" 15 U.S.C. § 78j(b). Under Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5 promulgated thereunder, it is unlawful, among other things, "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . .  not misleading[.]" 17 CFR §240.10b-5. The elements that a plaintiff must allege in order to assert a claim for securities fraud are that the defendant (1) made a "material misrepresentation or omission" (2) with "scienter," *i.e.*, with intent or recklessness, (3) "in connection with the purchase or sale of a security," which was (4) relied on by the plaintiff, who (5) suffered an economic loss which was (6) caused by the allegedly fraudulent misrepresentation or omission. Dura Pharms., Inc. v. Broudo, 544 U.S. 336 (2005).

On a motion to dismiss for failure to state a claim, the sufficiency of a plaintiff's allegations of these elements is judged against the pleading standards imposed by the Private Securities Litigation Reform Act ("PSLRA"), as opposed to those of Fed. R. Civ. P. 8. *See* Tellabs, 127 S.Ct. at 2508. The PSLRA requires a heightened degree of pleading specificity

with respect to the alleged misstatements and the state of mind of the defendant making them. *Id.* (PSLRA requires plaintiffs to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading . . . and state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind") (citations and internal quotation marks omitted). Despite these additional requirements, a Court reviewing a motion to dismiss a securities fraud claim must still "accept all factual allegations in the complaint as true," and "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss." *Id.*

Defendants' motion challenges the sufficiency of the Complaint's allegations with regard to scienter and loss causation.[3] In each case, Defendants' assertions are without merit, and provide no basis for dismissing the First Count of the Complaint, which complies with all requirements for stating a claim for securities fraud.

### A.    The Complaint Alleges Facts Supporting a Strong Inference That Defendants Acted with Scienter

The Complaint sets forth facts sufficient to allege that Defendants acted with a conscious misbehavior and recklessness that satisfy the scienter element of a securities fraud claim.

To meet the elements of scienter, a plaintiff is required to allege "facts evidencing scienter, *i.e.*, the defendant's intention to deceive, manipulate, or defraud." Tellabs, 127 S.Ct. at 2504 (quotation marks and citations omitted). Because of the difficulty of proving state of mind, scienter may be sufficiently pled circumstantially by allegations that the defendant had "both motive and opportunity to commit fraud," or other facts that "constitute strong circumstantial

---

[3] Defendants do not challenge the sufficiency of the Complaint's allegations with respect to the fact that the misrepresentations or omissions alleged were in conjunction with the sale or purchase of a security or with respect to damages.

evidence of conscious misbehavior or recklessness." <u>Kalnit v. Eichler</u>, 264 F.3d 131, 138-39 (2d Cir. 2001).  As for allegations of conscious misbehavior or recklessness, it is sufficient to allege reckless conduct that is "highly unreasonable" and "represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." <u>Miller v. Lazard, Ltd.</u>, 473 F. Supp.2d 571, 581 (S.D.N.Y. 2007)  (<u>citing</u> <u>In re Carter-Wallace, Inc. Sec. Litig.</u>, 220 F.3d 36, 39 (2d Cir. 2000) .  Deliberate illegal conduct automatically satisfies the scienter pleading requirement.  *Id.*

The Supreme Court has held that facts give rise to such a "strong inference" when the inference of scienter is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." <u>Tellabs</u>, 127 S.Ct. at 2505.  While the "at least as compelling" standard presents a higher pleading burden than the traditional "all reasonable inferences" standard of review for a 12(b)(6) motion, a plaintiff need not <u>prove</u> scienter at the pleading stage, or even allege facts from which scienter may be deemed a probable conclusion. *Id.* ("The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences'") (<u>quoting</u> <u>Fidel v. Farley</u>, 392 F.3d 220, 227 (6th Cir. 2004)) (internal citations omitted).  Rather, the allegations need only support an inference of scienter which is not less compelling than any competing explanation. Furthermore, the test to be applied by the Court on a motion to dismiss is "whether <u>all</u> of the acts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 2509 (emphasis original). Plaintiffs have stated numerous allegations that together easily meet its pleading burden as to scienter.

The Complaint alleges that Defendants misrepresented that the Funds would have a guaranteed annual return of twelve percent, with no fixed term, and that Plaintiffs could liquidate at any time. Compl. at ¶ 14. Under this false representation, Plaintiffs could invest for ten months or ten years and still make an annualized return of twelve percent and still redeem their investment at any time. A seasoned accountant, investment advisor, and founder of investment funds would know that such an investment vehicle is virtually unheard of and the Complaint alleges that the Defendants knew that no such opportunity was available when they made the misrepresentations. Compl. at ¶¶ 14, 29. Moreover, the Complaint alleges that the Defendants knew that fact and misrepresented it, in the first instance, to lure Plaintiffs to make the initial investment and continued the misrepresentations in order to entice subsequent investments. Compl. at ¶¶ 16-17, 22-24 and 26. At each of these points of investment, Defendants were no doubt aware that the investment opportunity they were representing could not have existed. Compl. at ¶ 32.

The circumstantial evidence is also clear that Defendants acted unreasonably and recklessly. In addition to knowing the falsity of the representations, *see infra*, Defendant Berson, given his experience and having held himself out as an experienced accountant and knowledgeable investment advisor, was at best reckless in making these misrepresentations to Plaintiffs when he said that Plaintiffs would earn a guaranteed rate of twelve percent and could redeem the investment at any time. Compl. at ¶¶ 8-10, 13. Second, Defendant Berson knew that Plaintiffs had no training and little experience in investments. Compl. at ¶ 12. Defendant Berson, as the Complaint alleges, exploited a position of trust that he had enjoyed for many years as Plaintiffs' accountant. Compl. at ¶ 13. As alleged, that position of trust was used to lure

Plaintiffs to turn over their retirement savings (and their children's savings) to funds that Defendants knew could not exist as described.

    **B.**    **The Complaint Alleges Facts That Satisfy the Loss Causation Element of a Securities Fraud Claim**

    Loss causation is the causal link between the alleged misconduct and the economic harm that a plaintiff suffers. Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 197 (2d Cir. 2003) . The PSLRA requires that, "[i]n any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4) . Loss causation has been compared to the concept of proximate cause in tort law. *Id*. That is, "the damages suffered by the plaintiff must be a foreseeable consequence of any misrepresentation or material omission." Castellano v. Young & Rubicam Inc., 257 F.3d 171, 186 (2d Cir. 2001) . A misstatement or omission is the "proximate cause" of an investment loss if the risk that caused the loss was within the zone of risk concealed by the misrepresentations and omissions alleged by a plaintiff. Lentell v. Merrill Lynch & Co. Inc., 396 F.3d 161, 173 (2d Cir. 2005) .

    A plaintiff may do one of two things to allege loss causation: 1) where the alleged misstatement conceals a condition or event which then occurs and causes the plaintiffs' loss, a plaintiff may allege that it is the manifestation of the undisclosed condition or event that caused the loss; or 2) a plaintiff may allege a particular disclosing event that reveals the false information or statement and then tie that to the decline in the artificial security price. Gordon Partners v. Blumenthal, et. al., 02 Civ. 7377 (LAK)(AJP), 2007 WL 431864, at *12 (S.D.N.Y. Feb. 9, 2007) .

Here, the Complaint alleges that Plaintiffs lost the present right to their money and the money itself, and that such loss is the direct and foreseeable consequences of Defendants' misrepresentations. Plaintiffs were told that they could redeem their investments at any time. This is alleged to have been false, and that falsity is evidenced by the fact that Plaintiffs' redemption efforts have been refused. Compl. at ¶¶ 25-27. As alleged, when faced with the discovery of its fraud, Defendants further tried to cover up their fraud by telling Plaintiffs that their investments were being "transitioned." Compl. at ¶ 25. This was and is not the case.

Moreover, sufficient evidence of loss causation exists where a jury can find that the defendant failed to disclose "the very risk to which [plaintiff] fell victim." Castellano, 257 F.3d at 189. Here, the Plaintiffs have fallen victim to the very risk Defendants failed to disclose – that the funds were not redeemable at any time and were not yielding a twelve percent return. Compl. at ¶ 14.

### C. Plaintiffs Have Pled Their Securities Fraud Claims with the Requisite Particularity

The PSLRA requires particularity in alleging the facts of the misrepresentation itself and the facts supporting the inference of scienter. Tellabs, 127 S.Ct. at 2508. While this represents a heightened burden over the simple notice pleading required by Rule 8, "[t]he [particularity requirement of the] PSLRA does not require plaintiffs to plead 'every single fact upon which their beliefs concerning false or misleading statements are based[.]'" Xerion Partners I LLC v. Resurgence Asset Mgmt., LLC, 474 F.Supp.2d 505 (S.D.N.Y. 2007) (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)). Rather, the facts alleged in the complaint must simply be "'sufficient to support a reasonable belief as to the misleading nature of the statement or omission.'" Id. (quoting Shields, 25 F.3d at 1128).

Defendants assert that somehow the Complaint lacks the requisite particularity because Defendant Berson invested in the same investments as Plaintiffs. Def. Memo of Law p. 9. Defendants go on to claim that this is a "plausible opposing [] inference that render[s] any inference of fraudulent intent dubious." *Id.* This assertion is fundamentally flawed. First, Defendants state that Plaintiffs "acknowledge that Berson also had money invested in Daremy Court LLC and Daremy Court XIV, along with a group of traders." Def. Memo of Law p. 9 <u>citing</u> to Compl. at ¶ 14. Plaintiffs only allege that Defendant Berson said he was invested, and have no reason, or evidence, to believe that this representation was true. Second, Defendant Berson, while knowing the nature of the investment *he* may have made, did not convey accurate material information to Plaintiffs and, even worse, affirmatively misrepresented the true nature of the investment.

Defendants also assert that, because Plaintiffs received statements showing an initial 12% return they were "paid" for several years consistent with Defendant Berson's misrepresentations. Defendants further claim that this somehow indicates that the "investments we[re] [*sic*] in fact legitimate." *See* Def. Memo of Law p. 10. First, Plaintiffs did not allege that they were paid the promised return. In fact, Plaintiffs have yet to see a single dollar of these alleged returns. Plaintiffs allege that the account statements they received regarding their investments in Daremy Court showed that they were receiving the promised return. Compl. at ¶ 23. These statements were based on Defendants' reports and have not been verified, and, of course, because Defendants have not redeemed the funds, Defendants have stymied that method of verification. Likewise, there is no way to verify that these statements are correct absent discovery in this matter. And, unless the Funds could be redeemed at any time, Plaintiffs still falsely represented

the nature of the funds, a fact which is now self-evident.  Plaintiffs' redemption demands have

gone unsatisfied.  Compl. at ¶¶ 26-27.

### III.    PLAINTIFFS' CLAIMS FOR COMMON LAW FRAUD, BREACH OF FIDUCIARY DUTY AND GROSS NEGLIGENCE ARE NOT DUPLICATIVE

Under New York law, a plaintiff may allege separate tort claims, including breach of

fiduciary duty, common law fraud and gross negligence, independent of an accompanying breach

of contract claim where the elements of those torts have been properly pled.  New York Univ. v.

Continental Ins. Co., 87 N.Y.2d 308, 320 (1995) .  Here, there is no dispute that the Second,

Third and Fifth Counts are properly pled.  Defendants instead assert that the claims are

duplicative of the breach of contract claim.  See Def. Memo of Law p. 10-11.  Defendants,

however, ignore that under New York law, the underlying facts of a tort claim may be the same

as a breach of contract claim so long as there is a separate legal duty independent of the contract

itself that supports the tort claim.  New York Univ., 87 N.Y.2d at 320,, Non-Linear Trading Co.,

Inc., v. Braddis Assoc., Inc., 243 A.D.2d 107, 115-16 (1st Dep't 1998) .  Here, Plaintiffs have

alleged a separate and distinct legal duty that each Defendant owed to them.  Compl. at ¶¶ 8-10.

First, Plaintiffs allege that Defendant Berson was acting as their accountant.  Under New

York law, Defendant Berson's relationship with the Plaintiffs established a fiduciary relationship

distinct and separate from any contractual relationship alleged.  Lavin v. Kaufman, Greenhut,

Lebowitz & Forman, 226 A.D.2d 107, 108-09 (1st Dep't 1996)  (reversing dismissal of breach of

fiduciary duty claim where accountant built a relationship of trust with plaintiff and then

allegedly committed fraud); Block v. Razorfish, Inc., 121 F.Supp.2d 401, 403 (S.D.N.Y. 2000)

(noting that under New York law an accountant's affirmative fraud on his client will result in

breach of fiduciary duty); Kanev v. Turk, 187 A.D.2d 395, 590 N.Y.S.2d 211, 211 (1st Dep't

1992) (finding that an accountant had a duty to his clients such that causes of action for fraud and breach of fiduciary duty were properly pled). Defendant Berson held himself out as, and acted on behalf of Plaintiffs as, an accountant for over 20 years. Compl. at ¶ 13. He was able to secure their trust through this accountant-client relationship to develop the investment advisor relationship he later created.

Defendants also had a duty to Plaintiffs as investment advisors. Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 599 (2d Cir.1991). Plaintiffs plead that Defendants acted as investment advisors in recommending the Funds as a proper investment vehicle for their retirement and children's funds. Compl. at ¶¶ 14-17, 22-24. Plaintiffs placed their trust in Defendants based on a long-term relationship with Defendant Berson and based on his superior knowledge regarding investments. Compl. at ¶¶ 12-14.

Therefore, Plaintiffs have alleged duties owed to them by Defendants which satisfy the pleading standards for common law fraud, breach of fiduciary duty and gross negligence.

## IV. SHOULD A PLEADING DEFICIENCY BE FOUND, PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND THE COMPLAINT

In the event that the Court were to find that any count of the Complaint fails to state a claim, Plaintiffs should be granted leave to file an amended complaint pursuant to Fed. R. Civ. P. 15(a) or permitted leave to perform limited discovery.

### A. Leave to Amend Is Proper

As the Rule indicates, leave to amend "shall be freely given when justice so requires." *Id*. Both the Second Circuit and this Court have repeatedly held that when claims are found deficient on a motion to dismiss, "the usual practice is to grant leave to amend the complaint." Rozani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990) (remanding with instructions to grant leave to amend); *see also* Kalnit, 85 F. Supp. 2d 232, 246 (S.D.N.Y. 1999) ("It is the usual practice upon

granting a motion to dismiss to allow leave to replead") (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)). Dismissal without such leave is typically reserved for situations where the Court previously granted leave to amend. *See* Rozani, 899 F.2d at 198 (concluding district court abused its discretion in dismissing complaint without leave to amend where plaintiff had not previously been given leave to amend); Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986) (same).

The Second Circuit has noted that Courts should be especially liberal in granting leave to amend in cases of dismissed securities fraud claims. *See* Acito v. IMCERA Group, Inc., 47 F.3d 47, 55 (2d Cir. 1995); Luce, 802 F.2d at 56 (noting with regard to dismissal of plaintiffs' 10b-5 claims that "[c]omplaints dismissed under Rule 9(b) [for failure to plead with particularity] are 'almost always' dismissed with leave to amend"). Similarly, courts freely grant leave to amend 10b-5 claims where plaintiffs' allegations regarding scienter are deemed deficient. *See, e.g.,* Devaney v. Chester, 813 F.2d 566, 568-69 (2d Cir. 1987) (ruling plaintiff whose 10b-5 complaint pled scienter with a single assertion that one of the defendants had "knowledge" of the inaccuracy of information accompanying prospectus must be given an opportunity to amend). *Id.* at 569.

Plaintiff should, therefore, be given the opportunity to amend its complaint in the event that the Court grants any part of the Defendants' motion to dismiss.

### B.    Limited Discovery is Appropriate

Although Plaintiffs have alleged proper securities fraud claims, should the Complaint be deficient in any manner, limited discovery would no doubt allow Plaintiffs to learn particularized facts that would cure any pleading defect in the Complaint because the facts and circumstances of this case have been fraudulently concealed by the Defendants to the detriment of the Plaintiffs.

While the relevant provision of the PSLRA provides that, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss," it makes an exception when "particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B), Taft v. Ackermans, 02 Civ. 7951(PKL), 2005 WL 850916, at *4 (S.D.N.Y. April 13, 2005). Plaintiffs clearly fall into this exception because all of the facts and relevant information of the fraud are in the sole control and domain of the Defendants and they refuse even to respond to Plaintiffs' redemption requests.

Here, there is no concern that the Plaintiffs are seeking discovery to coerce a settlement or to support a claim not alleged in the Complaint. See In re Worldcom Sec. Litig., 234 F.Supp.2d 301, 305 (S.D.N.Y. 2002) ("The legislative history of the PSLRA indicates that Congress enacted the discovery stay in order to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery") (citations omitted); Taft, 2005 WL 850916 at *4. Limited discovery would just be a means to even the playing field by allowing Plaintiffs access to particularized facts they have already alleged but in a manner sufficient to withstand the heightened pleading standards of a securities fraud action. For example, limited discovery would reveal the true rate of return of the funds, if any, the true term of the investment, and most importantly, what happened to the seemingly squandered funds. Without limited discovery, Plaintiffs are unduly prejudiced by Defendants' sole control and dominion of the facts relevant to this case.

Notwithstanding the foregoing, Plaintiffs have pled a proper claim with the facts they have alleged.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Defendants' Motion to Dismiss the Complaint, and to grant such other relief as the Court deems just and proper.

Dated:  New York, New York
        February 28, 2008

CROWELL & MORING LLP


By: ___s/ Peter R. Ginsberg_____
    Peter R. Ginsberg (PG6712)
    Patrick Gaffney (PG1584)
    153 East 53rd Street
    New York, New York 10022
    Tel. No.:  212-223-4000
    Fax No.:  212-223-4134

    Attorneys for Plaintiffs Merrill Herman and Sharron Dupler